J-A07038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RAHSAAN CARTER | |
| Appellant | No. 2031 WDA 2014 |

Appeal from the Judgment of Sentence November 18, 2014
in the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0000163-2014

BEFORE:  BOWES, J., MUNDY, J., and JENKINS, J.

DISSENTING MEMORANDUM BY JENKINS, J.:          **FILED JULY 21, 2016**

I agree that, upon learning Appellant was not properly licensed and the vehicle did not belong to him, the police had reasonable suspicion to conduct a traffic stop/investigatory detention of Appellant, which the police commenced by asking Appellant to turn off, and alight from, the vehicle. However, because I disagree with the learned majority that the police had reasonable suspicion to conduct a pat down search of Appellant's person, I respectfully dissent.

Our Supreme Court has held that, once a police officer has reasonable suspicion of criminal activity sufficient to conduct an investigative detention, to conduct a pat down, he must possess a further "justified belief that the individual, whose suspicious behavior he is investigating at close range, is

armed and presently dangerous to the officer or to others." *Commonwealth v. Zhahir*, 751 A.2d 1153, 1158 (Pa.2000).

"In considering the evidence purported to support a *Terry*[1] frisk, we are guided by common sense concerns, giving preference to the safety of the officer during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for, a weapon." *Commonwealth v. Cooper*, 994 A.2d 589, 592 (Pa.Super.2010) (internal quotations and citation omitted).

This Court has stated Pennsylvania's law on pat-down searches as follows:

> If, during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct on the part of the individual which leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons. In order to establish reasonable suspicion, the police officer must articulate specific facts from which he could reasonably infer that the individual was armed and dangerous. When assessing the validity of a *Terry* stop, we examine the totality of the circumstances, giving due consideration to the reasonable inferences that the officer can draw from the facts in light of his experience, while disregarding any unparticularized suspicion or hunch.

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, (1968) (holding search for weapons in absence of probable cause to arrest must be strictly circumscribed by exigencies which justify its initiation and must be limited to that which is necessary for discovery of weapons which might be used to harm officer or others nearby).

*Commonwealth v. Mack*, 953 A.2d 587, 590 (Pa.Super.2008) (*quoting Commonwealth v. Wilson*, 927, A.2d 279, 284 (Pa.Super.2007)) (internal citations omitted); *see also Terry*, *supra*; *In re N.L.*, 739 A.2d 564, 567 (Pa.Super.1999) ("[This Court] cannot evaluate the totality of the circumstances through the grudging eyes of hindsight nor in terms of library analysis, but as understood by those versed in the field of law enforcement.").

"The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger." *Commonwealth v. Taylor*, 771 A.2d 1261, 1269 (Pa.2001) (*quoting Terry*, 392 U.S. at 27). "[I]f a suspect engages in hand movements that police know, based on their experience, are associated with the secreting of a weapon, those movements will buttress the legitimacy of a protective weapons search of the location where the hand movements occurred." *Commonwealth v. Foglia*, 979 A.2d 357, 361 (Pa.Super.2009).

In addition to suspecting an individual may be armed and dangerous, "[i]t is . . . reasonable to subject a suspected intravenous drug user properly detained at an investigatory stop to a limited pat down for needle possession to promote the officer's safety." *Commonwealth v. Kondash*, 808 A.2d 943, 948 (Pa.Super.2002). Accordingly, police may preface a *Terry* frisk by asking if the detainee possesses items that may harm the police. *See id.* (intravenous needles).

Here, the arresting officer explained his reasons for patting Appellant down as follows:

> A: . . . I needed him to get out of the vehicle because it wasn't matching up, his story.
>
> Q: When he exited the vehicle, based on the totality of the circumstances, what was your inclination as to the situation for your safety?
>
> A: I wanted to make sure that he didn't possess anything that would harm myself or the other officers.
>
> Q: What factors up to that point gave you pause for your safety?
>
> A: The stories weren't matching up. They said they didn't know who Alicia was but they knew who Keisha was, and just that they are in a high crime area, parked there sitting outside the apartment. So I went around the front of the vehicle and I asked [Appellant] if there was anything on him that I needed to be aware of.

N.T. 5/15/2014, pp. 12-13. The officer later expressly stated that Appellant was not making any furtive movements. *Id.* at 16.

Regarding the propriety of the pat down search, the trial court simply stated, "Detective Arcurio learned [Appellant] was sitting in the driver's seat of a running vehicle registered to another person, without a valid Pennsylvania driver's license." 1925(a) Opinion, p. 6. Based on these factual findings, the trial court concluded "[t]hese facts gave Detective Arcurio reasonable suspicion to ask [Appellant] to exit the vehicle, and to

- 4 -

perform a pat down search for officer safety."[2]   ***Id.***   The Commonwealth argues that additional facts further supported the propriety of the pat down search: (1) that this encounter occurred in a high-crime area, (2) outside the house of the individual police intended to arrest, and (3) Appellant's proffered reason for his presence was not credible.   ***See*** Commonwealth's Brief, p. 6.

As previously stated, based on his location, his responses to police inquiries, and his demeanor, the police had reasonable suspicion to conduct an investigative detention of Appellant.   That investigative detention effectively transformed into a vehicle stop once the police investigation revealed Appellant was operating someone else's vehicle without a license. Once they learned Appellant was not licensed, the police had probable cause to cite him for a violation of the Vehicle Code,[3] despite the fact they had not pulled Appellant over in the vehicle he was then controlling.   Accordingly, it was within the police's prerogative to have Appellant alight from the vehicle to continue what was now effectively a vehicle stop.   ***See Commonwealth v. Boyd***, 17 A.3d 1274, 1277 (Pa.Super.2011) ("When a police officer lawfully stops a motorist for a violation of the Pennsylvania Motor Vehicle

---

[2] The trial court also stated that the pat down was incident to arrest, a conclusion discussed ***infra***.   ***See*** Trial Court 1925(a) Opinion, pp. 6-7.

[3] 75 Pa.C.S. § 1543, driving while operating privilege is suspended or revoked.

Code, the officer is permitted to ask the driver to step out of the vehicle 'as a matter of right.'").

However, in my opinion, the police did not articulate during the suppression hearing sufficient additional specific facts observed from which they could have reasonably inferred that Appellant was armed and dangerous prior to conducting the pat down search. They did not observe furtive movements of hands or other parts of Appellant's body during the investigative detention. Appellant did not reach for his waistband, move to secret anything inside the vehicle, or act in a threatening manner towards the police. Further, although the stop occurred in a high crime area, it was effectively a traffic stop, and the stop occurred at noon, not the middle of the night. In short, the police did not have reasonable suspicion to conduct a *Terry* pat down search.

Even viewing the totality of the circumstances – including Appellant's suspect story of why he was there and his presence outside of a house that was in a high crime area and under surveillance – I do not believe police observed adequate specific facts that could have justified a reasonable suspicion and/or inference that Appellant was armed and dangerous. Further, even if police observed such facts at the scene, they failed to articulate those facts during the suppression hearing.

Finally, while I recognize the paramount concern for police officer safety, under the instant circumstances, I do not feel the police had the requisite reasonable suspicion to conduct a lawful *Terry* pat down search

based on a concern for their safety. Here, the police did not pat down an individual they observed secreting a weapon, or a drug user who may have had dirty needles on his person. Instead, they patted down a person who, during the course of what was effectively a traffic stop, had not engaged in furtive movements of any sort, and was complying with police directives. The police had no indication that Appellant was armed, dangerous, or possessed objects that could injure the police. Accordingly, I feel that the pat down search of Appellant after the police asked him to alight from the vehicle was improper.

Accordingly, I am compelled to dissent.